**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **HAROLD L. WILSON,** ) | **CASE NO. 4:07CV00539** |
| **Executor of the Estate of** ) | |
| **Terry L. Wilson,** ) | |
| ) | |
| Plaintiff, ) | **JUDGE PETER C. ECONOMUS** |
| ) | |
| V. ) | |
| ) | |
| **CITY OF WARREN, OHIO,** *et al.,* ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Defendants. ) | |
| ) | |

This matter is before the Court upon a Motion for Summary Judgment filed by Defendants Officer Mark Hynes ("Officer Hynes") and Officer John Wilson ("Officer John") (collectively, "the individual Defendants").[1] (Dkt. # 14). The instant motion seeks summary judgment on the issue of qualified immunity.

**I. FACTUAL BACKGROUND**

This action arises out of the arrest of Terry L. Wilson ("Wilson") at the Paris Café bar located in the City of Warren, Ohio, on February 27, 2006. (Dkt. # 1 at ¶ 10). Police were called to the bar as a result of Wilson's harassment of the barmaid and bar patrons

---

[1] The Complaint names as a defendant "Officer John _____, #4695." Attached as Exhibit C to Defendants' Motion for Summary Judgment, however, is the affidavit of Officer John Wilson, #4695, who acknowledges being dispatched to the Paris Café bar during the incident involving Terry Wilson.

1

while Wilson was intoxicated. (Dkt. # 1 at ¶ 11). Officer Hynes was the first officer to arrive at the bar. (Dkt. # 1 at ¶ 12).

The parties disagree on the events leading up to and following Wilson's arrest. The Complaint alleges that, as Officer Hynes approached him, Wilson raised his hand and pointed at Officer Hynes. (Dkt. # 1 at ¶ 13). Officer Hynes then grabbed Wilson and threw him to the floor. (Dkt. # 1 at ¶ 14). Wilson alleges that other officers arrived at that point and Wilson was placed in handcuffs. (Dkt. # 1 at ¶ 14). The Complaint further alleges that after handcuffing him, Officer Hynes punched Wilson several times and struck him repeatedly with his baton, while the other officers also beat Wilson while he was handcuffed on the floor. (Dkt. # 1 at ¶ 15).

Officer Hynes and Officer John present a different account. According to Officer Hynes, as he approached Wilson in the bar, Wilson pointed at the officer's temple and threatened to punch the officer in the temple and kill him. (Dkt. # 14, Ex. A). Officer Hynes then attempted to put Wilson in a "MACH 2 hold" and escort him from the bar. (Dkt. # 14, Ex. A). Officer Hynes claims that Wilson managed to escape the hold and punched Officer Hynes, striking him in the forearm as the officer defended himself. (Dkt. # 14, Ex. A). Officer Hynes then punched Wilson "approximately twice." (Dkt. # 14, Ex. A). When Officer Hynes backed away from Wilson, Wilson charged at him. (Dkt. # 14, Ex. A). At this time, Officer John and Officer Thad Stephenson ("Officer Stephenson") arrived at the bar. (Dkt. # 14, Ex. A). Officer John heard Wilson threaten to kill Officer Hynes. (Dkt. # 14, Ex. C). Officer Hynes then drew his ASP baton and struck Wilson in

2

the left thigh three times, but was unable to stop Wilson from charging. (Dkt. # 14, Ex. A). While attempting to strike Wilson in the thigh, Officer Hynes accidentally struck Wilson in the arm. (Dkt. # 14, Ex. A). Officer Stephenson also struck Wilson with his baton in the back of the leg, but with no effect. (Dkt. # 14, Ex. B). While attempting to strike Wilson in the upper arm with his baton, Officer Stephenson inadvertently struck Wilson in the head, also with no effect. (Dkt. # 14, Ex. B). Officer Stephenson then pulled Wilson to the ground on top of himself. (Dkt. # 14, Ex. B). Wilson continued to resist arrest while on the ground, causing Officer Hynes to strike Wilson again in the leg with his baton. (Dkt. # 14, Ex. A). Officer John then pulled Wilson off of Officer Stephenson, rolled Wilson onto his stomach, and handcuffed him. (Dkt. # 14, Ex. A, C). At that point, Wilson became compliant and no further force was used. (Dkt. # 14, Ex. C). Wilson was then transported to the hospital to receive treatment for his injuries. (Dkt. # 1 at ¶ 18; Dkt. # 14, Ex. A).

Wilson filed his Complaint on February 23, 2007. (Dkt. # 1). Count I of the Complaint asserts a claim under 42 U.S.C. § 1983 against Officer Hynes, Officer John, and four unnamed Warren police officers in both their individual and official capacities, alleging a violation of Wilson's rights under the Fourth and Fourteenth Amendments. (Dkt. # 1 at ¶¶ 21-24). Count II asserts a claim of assault and battery against the individual Defendants. (Dkt. # 1 at ¶¶ 25-27). Count III asserts a claim under § 1983 against the City of Warren.

On July 5, 2007, following Wilson's death, Harold L. Wilson, as executor of

Wilson's estate, was substituted as Plaintiff.[2] Officer Hynes and Officer John filed the instant Motion for Summary Judgment on August 1, 2007, seeking summary judgment on the issue of qualified immunity. (Dkt. # 14). Plaintiff filed a Response and Memorandum in Opposition to Defendants' Motion for Summary Judgment on September 7, 2007. (Dkt. #15). Defendants filed a Reply in Support of their Motion for Summary Judgment on September 17, 2007. (Dkt. # 20).

## II. LAW AND ANALYSIS

Summary judgment is proper where there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The party seeking summary judgment bears the initial burden of demonstrating that no genuine issue of material fact exists. Id. at 323. Once that burden has been met, the non-moving party may not rest upon the allegations set forth in his Complaint. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). Rather, he must present some significant probative evidence in support of his allegations. Id. "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve

---

[2] Terry Wilson's death was unrelated to the incident giving rise to the Complaint.

the parties' differing versions of the dispute at trial." 60 Ivy Street Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir. 1987) (citing First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288-89 (1968)). "The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Anderson, 477 U.S. at 250).

### A. Qualified Immunity

The affirmative defense of qualified immunity "shields government officials from 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Smoak v. Hall, 460 F.3d 768, 777 (6th Cir. 2005) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity is available to state officials, such as police officers, sued in their individual capacities under § 1983 for wrongful conduct committed during the performance of discretionary functions. Garretson v. City of Madison Heights, 407 F.3d 789, 796 (6th Cir. 2005). Because it is an immunity from suit, rather than simply a defense to liability, questions of qualified immunity are decided at the earliest possible stage of litigation. Mitchell v. Forsyth, 472 U.S. 511, 526 (1985); Harlow, 457 U.S. at 818.

The Supreme Court has developed a two-part test to determine whether a defendant

5

is entitled to qualified immunity. Saucier v. Katz, 533 U.S. 194, 201 (2001).[3] First, a court must decide whether, taken in the light most favorable to the plaintiff, the facts alleged show that the defendant violated a constitutional right. Id. If a violation is shown, the court must then determine whether the particular right was clearly established, such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202.

Plaintiff brings claims against the individual defendants under § 1983 for unreasonable seizure and excessive force, alleging violations of his Fourth and Fourteenth Amendment rights. (Dkt. # 1 at ¶ 21(a)). It is well-established, however, that claims for unreasonable seizure and excessive force fall under the Fourth Amendment and do not implicate an individual's rights under the Fourteenth Amendment. Graham v. Connor, 490 U.S. 386, 388 (1989). Thus, the Court analyzes Wilson's claims only in a Fourth Amendment context.

### *1. Plaintiff's Unreasonable Seizure Claim*

Plaintiff's Complaint alleges that Officer Hynes and Officer John, acting under color

---

[3] The Court acknowledges that the Sixth Circuit occasionally performs a three-step inquiry in the qualified immunity analysis. See Estate of Carter v. City of Detroit, 408 F.3d 305, 310-311 (6th Cir. 2005). The Sixth Circuit has pointed out that a two-step analysis is sufficient if the case at issue "is one of the many cases where, if the right is clearly established, the conduct at issue would also be objectively unreasonable." In such cases, the Sixth Circuit has "collapse[d] the second and third prongs" in an effort to "avoid duplicative analysis." Because the constitutional right against excessive force has long been clearly established law, the Court finds the two-step inquiry appropriate in the instant action. See Tennessee v. Garner, 471 U.S. 1, 7 (1985); Graham, 490 U.S. at 394.

6

of law, "made an unreasonable seizure of the person" of Wilson during the incident in the Paris Café, in violation of Wilson's Fourth Amendment rights. (Dkt. # 1 at ¶ 8). In their motion for summary judgment, the individual Defendants argue that, because they had probable cause to suspect that Wilson was engaged in criminal activity, the seizure of Wilson was not unreasonable. Therefore, the officers assert, they are entitled to qualified immunity on Wilson's unreasonable seizure claim.

Under the Saucier test, the initial inquiry must be whether Defendants violated Wilson's rights against unreasonable seizure. The arrest of an individual by police officers violates the Fourth Amendment if the officers' seizure of the individual was not supported by probable cause. Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001). An arrest is supported by probable cause where, at the moment the arrest is made, "the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." Beck v. State of Ohio, 379 U.S. 89, 91 (1964) (citing Brinegar v. United States, 338 U.S. 160, 175-76 (1949)); see also Hunter v. Bryant, 502 U.S. 224, 228 (1991).

According to the Complaint, Wilson was intoxicated at the Paris Café on February 27, 2006. (Dkt. # 1 at ¶ 10). He "argued with the barmaid seeking drink for credit, and became loud, at which point the barmaid telephoned the [Warren] police." (Dkt. # 1 at ¶ 11). Wilson was still inside the bar when Officer Hynes arrived in response to the disorderly conduct call. When the officer entered the bar, he and Wilson "argued and

7

[Wilson] raised his arm and pointed at [Officer Hynes] with his finger." (Dkt. # 1 at ¶ 13). It was at that point that Officer Hynes began the process of arresting Wilson. Officer John arrived later and assisted in completing the arrest.

These facts, even taken in the light most favorable to Plaintiff, support a finding of probable cause to arrest Wilson. Based upon Wilson's intoxication, his arguing with and gesturing toward Officer Hynes, and reports of his arguing with the barmaid, Officer Hynes concluded that probable cause existed to arrest Wilson for disorderly conduct. Ohio Rev. Code § 2917.11(B) defines the crime of disorderly conduct as follows:

> No person, while voluntarily intoxicated, shall do either of the following:
>> (1) In a public place or in the presence of two or more persons, engage in conduct likely to be offensive or to cause inconvenience, annoyance, or alarm to persons of ordinary sensibilities, which conduct the offender, if the offender were not intoxicated, should know is likely to have that effect on others;
>>
>> (2) Engage in conduct or create a condition that presents a risk of physical harm to the offender or another, or to the property of another.

Based upon Wilson's conduct, Officer Hynes' conclusion with regard to probable cause was correct. Thus, because probable cause existed to arrest Wilson, Defendants did not violate his Fourth Amendment right against unreasonable seizure. Absent a constitutional violation, the Saucier inquiry goes no further, and Defendants are entitled to qualified immunity.

Nevertheless, even if probable cause did not exist to arrest Wilson, Officer Hynes and Officer John are entitled to qualified immunity on Plaintiff's unreasonable seizure

claim if a reasonable officer in their position could have believed that probable cause existed to make the arrest. Hunter, 502 U.S. at 228. The Supreme Court has explained that this "accommodation for reasonable error exists because officials should not err always on the side of caution because they fear being sued." Id. at 229 (internal quotations omitted).

Based upon the facts known to them at the time, the individual Defendants' belief that probable cause existed to arrest Wilson was objectively reasonable, even if mistaken. Faced with the decision of whether to arrest an intoxicated, disruptive, and verbally abusive bar patron, or to leave him free to continue his conduct, the officers chose to arrest Wilson and prevent any further incident. This was a reasonable decision. As such, the individual Defendants are entitled to qualified immunity with regard to Plaintiff's unreasonable seizure claim.

### *2. Plaintiff's Excessive Force Claim*

The Complaint alleges that the individual Defendants violated Wilson's constitutional rights by using excessive force in effectuating Wilson's arrest. Defendants argue that they are entitled to qualified immunity on Plaintiff's claim because their use of force "was objectively reasonable in relation to [Wilson]'s physical attack." (Dkt. # 14 at 9).

As the Court has noted, the first step in the Saucier inquiry is whether a constitutional violation occurred. Where an officer's use of force was objectively reasonable in light of the facts and circumstances confronting the officer on the scene, no

9

has violation occurred and the officer is entitled to qualified immunity against an excessive force claim. Graham, 490 U.S. at 396-97. The Supreme Court has "cautioned against the '20/20 vision of hindsight' in favor of deference to the judgment of reasonable officers on the scene." Saucier, 533 U.S. at 205 (quoting Graham, 490 U.S. at 393, 396). "The ultimate question is 'whether the totality of the circumstances justified a particular sort of search or seizure.'" Summerland v. County of Livingston, 2007 WL 2426463, *5 (6th Cir. 2007) (quoting Tennessee v. Garner, 471 U.S. 1, 8-9 (1985)).

Although at the summary judgment stage the Court must view all facts in the light most favorable to the non-moving party, that party, "by affidavits or as otherwise provided by [FED. R. CIV. P. 56], must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Thus, the non-moving party "may not rest upon the mere allegations or denials of [that] party's pleading." Id. When a summary judgment motion is well-supported by evidence indicating one set of facts, it is not sufficient for the party opposing summary judgment to rely on the different facts averred in the Complaint without providing some evidence to support them. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

Defendants' Motion for Summary Judgment is supported by evidence in the form of affidavits and police reports indicating that Wilson attacked Officer Hynes and resisted arrest, requiring the use of force by the officers. According to the police reports, when Officer Hynes arrived at the bar, Wilson attacked the officer and threatened to kill him. (Dkt. # 14, Ex. A). When Officer John and Officer Stephenson arrived at the bar, they

10

found Wilson struggling with Officer Hynes and attempted to assist Officer Hynes in subduing Wilson. (Dkt. # 14, Ex. A, B, C). Wilson continued to struggle with the officers and resist arrest, requiring the officers to forcibly subdue him. (Dkt. # 14, Ex. A, B, C). The officers admit to using their batons to strike Wilson in an effort to stop his attack, resulting in the injuries Wilson sustained. (Dkt. # 14, Ex. A, B, C).

Plaintiff's Response, however, offers no evidence to support the facts alleged in the Complaint. Plaintiff's only evidence is the affidavit of David Wilson, a series of photographs and hospital records detailing Wilson's injuries, and a portion of the transcript of Officer Hynes' testimony from the state court Preliminary Hearing on Wilson's assault charges. (Dkt. # 15-2, 15-3). This evidence is insufficient to demonstrate a genuine issue of material fact on the issue of qualified immunity.

First, the evidence detailing Wilson's injuries is not inconsistent with the evidence provided by Defendants. Wilson's head injury and bruising are explained by the police reports attached to Defendants' Motion for Summary Judgment, in which the officers describe the use of their batons to subdue Wilson. (Dkt. # 14, Ex. A, B, C). Plaintiff's evidence, therefore, is not probative of the reasonableness of the officers' use of force, and does not create a genuine issue of material fact.

The affidavit of David Wilson, Wilson's nephew, also fails to support the facts alleged by Plaintiff. (Dkt. # 15-2). According to the affidavit, David Wilson was never inside the Paris Café with Wilson on the day of his arrest. David Wilson only arrived at the bar after Wilson had been arrested and an ambulance had arrived to treat his injuries. The

11

affidavit, therefore, offers no personal knowledge from David Wilson regarding the events leading up to the police being called and Wilson being arrested, nor does it give any account of the circumstances of the arrest. Thus, it does not set forth specific facts showing that there is a genuine issue for trial.

Finally, Officer Hynes' testimony in the state court Preliminary Hearing simply confirms the information in the police reports provided by Defendants. The testimony neither supports the facts alleged in the Complaint, nor provides a basis for finding the officers' use of force unreasonable. This evidence, therefore, also fails to create a genuine issue of material fact that would render summary judgment inappropriate.

Having provided no evidence in support of the facts alleged in the Complaint, Plaintiff has failed to show that there exists a genuine issue of material fact for trial on the issue of qualified immunity with regard to his excessive use of force claim. All of the evidence in the record, taken in the light most favorable to Plaintiff, suggests that the officers' use of force was objectively reasonable in response to Wilson's conduct. Therefore, no violation of Wilson's constitutional rights occurred, and the individual Defendants are entitled to qualified immunity with regard to Plaintiff's excessive use of force claim.

## III. CONCLUSION

For the foregoing reasons, the Court hereby orders that the individual Defendants' Motion for Summary Judgment on the Issue of Qualified Immunity (Dkt. # 14) is

**GRANTED**. Defendants Officer Mark Hynes and Officer John Wilson are entitled to qualified immunity against Plaintiff's claims brought against Defendants in their individual capacities pursuant to 42 U.S.C. § 1983.

This matter is set for a Case Management Conference before the Court on November 15, 2007, at 11:00a.m.

**IT IS SO ORDERED**.

>  <u>**/s/** *Peter C. Economus* **– October 31, 2007**</u>
>  **PETER C. ECONOMUS**
>  **UNITED STATES DISTRICT JUDGE**